Counsel Submitting:

DAWN R. SCOTT
Bonner Stinson, P.C.
1421 Rumsey Avenue
Cody, Wyoming 82414
Telephone No.:  (307) 587-0300
Telefacsimile:  (307) 527-6092

Attorney for Sandra McWhirter, Movant

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re: | ) |
| | ) |
| ASPEN DEVELOPMENT, LLC | ) Case No. 09-20184 |
| | ) Chapter 11 |
| | ) |
| | ) |
| Debtor. | ) |
| | ) |
| _____ | ) |
| | ) |
| SANDRA MCWHIRTER | ) |
| | ) |
| Movant, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| ASPEN DEVELOPMENT, LLC | ) |
| | ) |
| Respondent. | ) |

## MOTION OF SANDRA MCWHIRTER FOR RELIEF FROM THE AUTOMATIC STAY
### (Including Notice of Time To Object)

TO:   The Honorable Peter J. McNiff
       United States Bankruptcy Judge

Pursuant to 11.U.S.C. § 362(d), Rule 4001, Fed. R. Bank. P., and Wyoming L.B.R. 4001-1, Sandra McWhirter, (hereinafter "Movant") by and through her counsel, Dawn R. Scott of Bonner Stinson, P.C., hereby moves the Court for an order modifying the automatic stay so as to permit Movant

1

to access funds held in an escrow account stemming from Respondent's sale of real property to Movant. Movant respectfully provides the following in support of this motion:

1.    On August 3, 2008, Movant, Sandra A. McWhirter (a/k/a Sandra McWhirter) made a written offer to the above-named debtor, Aspen Development, LLC ("Debtor") for the purchase of real property. The offer was made on parcel of property commonly known as 1194 Sequoia Drive, Powell, Wyoming 82435 and more particularly described as Whispering Pines Addition, Phase 1 amended, Lot 19. The offer to purchase document is more correctly identified as the "Contract to Buy and Sell Real Estate" and dated August 2, 2008. See attached hereto as *Exhibit A*.

2.    On August 6, 2008, Debtor made a counter-offer which was subsequently accepted by Movant. See attached hereto as *Exhibit B*.

3.    On August 28, 2008, Debtor conveyed to Sandra McWhirter, Trustee of the Sandra McWhirter Trust under Agreement dated September 9, 2006, by Warranty Deed the afore-mentioned parcel of property at 1194 Sequoia Drive in Powell, Wyoming. See attached hereto as *Exhibit D*.

4.    On September 11, 2008, Debtor and Movant entered into an "Escrow Memorandum of Understanding" whereby Debtor was "Seller" and Movant was "Buyer." Wyoming Real Estate Network, Inc. was the real estate broker in the sale of the afore-mentioned property.

5.    Per the Escrow Memorandum (hereinafter "Memorandum" or "Agreement"), the

> [p]arties agree that $20,000 (escrowed funds) is withheld from Seller's Proceeds until house is completely finished in a workmanlike manner and landscaped as per aforementioned Contract to Buy and Sell Real Estate. Said funds to be held in Wyoming Real Estate Trust account

2

and turned over to Seller's lender upon completion (as per Title Commitment requirement). A walk-through by buyer or buyer's representative to be schedule [sic] prior to release of said escrowed funds.

See attached hereto as *Exhibit C*.

6.     On October 24, 2008, Wyoming Real Estate Network, Inc. made a payment of $7,000 from the escrow funds to T&D Landscaping for work claimed to have been performed on the property. See attached hereto as *Exhibit E*. The funds were not interplead as Movant and Wyoming Real Estate Network, Inc. desired to reach agreement among all parties without interpleading.

7.     A representative for Wyoming Real Estate Network, Inc. has indicated the payment was made at the direction of Seller's Lender, Pinnacle Bank and that a balance of $13,000 remains in the Trust account for use in completing the property at 1194 Sequoia Drive, Powell, Wyoming.

8.     Per *Exhibit E*, Movant was not aware a payment from the escrowed funds had been made from the Broker's Trust account until mid-March of 2009. Movant and Wyoming Real Estate Network, Inc. disagree as to whether the $7,000 should have been paid to T&D Landscaping. Movant seeks return or reimbursement of the $7,000 to the Trust account to address the monies issued in contradiction the Escrow Memorandum.

9.     Wyoming Real Estate Network Inc.'s trust account is believed by the undersigned to still contain the remaining $13,000 in escrow funds.

10.    It is apparent that the Debtor filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code on March 12, 2009 (the "Petition Date").

11.    Debtor did not directly notify Movant of the Petition and she is not included as a creditor on any schedule submitted by Debtor. Debtor has not identified the funds set aside by the Escrow Memorandum nor is the Memorandum identified on Schedule G as an existing executory contract, indicating instead that Debtor has no executory contracts or unexpired leases.

12.    The undersigned recently learned Debtor has filed a Plan Of Reorganization. Movant is not identified on the Plan nor is there mention of the Escrow Memorandum as an assumed executory contract.

13.    Movant asserts a number of items remain to be completed on the 1194 Sequoia Drive property for it to be satisfactory under the Contract to Buy and Sell Real Estate and Escrow Memorandum. She and Wyoming Real Estate Network, Inc. have communicated, and will continue to communicate, regarding items that remain to be completed.

14.    As such, Movant desires to have access to the funds recognized in the Escrow Memorandum so that the remaining outstanding items on the home and property may be completed.

15.    Granting this motion will allow Movant to resolve the remaining issues directly with the Debtor and/or to pursue her legal rights against the Debtor if necessary for completion of the property.

16.    Movant does not believe that she has been offered adequate protection for her interest in the funds identified in the Escrow Memorandum payable to Debtor's lender and held in trust by Wyoming Real Estate Network, Inc. Movant submits cause exists to modify the stay and that she

may suffer irreparable injury, loss and damage if relief under 11 U.S.C. § 362(d) is denied.

17.    Accordingly, Movant respectfully requests an Order from the Court granting release of these funds from the Bankruptcy Estate.

WHEREFORE, Movant prays that upon proper notice to Debtor, Debtor's attorney, the Trustee, and any other party who may have an interest in the above described escrowed funds, the stay pursuant to 11. U.S.C. § 362(d) be modified so as to grant Movant permission to access the funds identified by the Escrow Memorandum.

Dated this 29th day of January, 2010.

SANDRA MCWHIRTER, Movant


By: _____
      DAWN R. SCOTT WSB #6-4008
      Bonner Stinson, P.C.
      1421 Rumsey Avenue
      Cody, Wyoming 82414
      (307) 587-0300


## NOTICE OF TIME TO OBJECT

YOU ARE HEREBY NOTIFIED that if you desire to oppose the above Motion for Relief from Automatic Stay, you are required to file with this Court and serve on Dawn R. Scott, attorney for the Movant, whose address is shown above, a written objection to the motion on or before February 15, 2010, or the relief requested may be granted by the Court.

Dated this 29th day of January, 2010.

_____
Dawn R. Scott

5

## CERTIFICATE OF SERVICE

The undersigned, attorney for the Movant, does hereby certify that on the 29th day of January, 2010, the above and foregoing Motion for Relief from Automatic Stay, together with the Notice of Time to Object and proposed Order Granting Relief from Automatic Stay, were served via U.S. mail postage prepaid, on the Debtor, the Debtor's counsel, the United States Trustee, and the 20 Largest Creditors as indicated below:

Aspen Development, LLC
516 Wyoming Blvd.
P.O. Box 1737
Mills, WY 82644

Hampton M. Young, Jr.
Law Office of Hampton Young
254 North Center, Suite 100
Casper, WY 82601

U.S. Trustee
U.S. Trustee's Office
308 West 21st Street, Second Floor
Cheyenne, WY  82001

J. Scott Douglass
909 Fannin, Suite 1800
Houston, TX 77101

### *20 LARGEST CREDTIORS-VIA UNITED STATES MAIL*

American Distributing Co.
P.O. Box 1576
Billings, MT 59103-1576

Big Horn Basin Electric
P.O. Box 81
Otto, WY 82434

Big Horn Carpet
P.O. Box 727
Cody, WY 82414

Bloedorn Lumber Powell
1075 West Coulter
Powell, WY 82435

Bradford Plumbing
P.O. Box 762
Ralston, WY 82440

Brammer Law Office
P.O. Box 1827
218 South 3rd St.
Sterling, CO 80751

CAT Financial
P.O. Box 340001
2120 West End Ave
Nashville, TN 37203-0001

Crescent Electric Co.
HSBC
P.O. Box 5239
Carol Stream, IL 60197-5239

Custom Air, Inc.
P.O. Box 345
Powell, WY 82435

Darrah, Darrah & Brown, PC
254 East Second St.
Powell, WY 82435

Freedom Foods, Inc.
P.O. Box 385
Mills, WY 82644

Frieberg
Campbell, Hightower & Adams
4645 Lakeshore Dr. Ste 11
Tempe, AZ 85282

GEMB
3353 Michelson Dr.
Irvine, CA 92612

Haid Plumbing
1910 Woolwick St.
Casper, WY 82609

Jason Pelligrino
Integrity Building Services
624 Ave H
Powell, WY 82435

Keither R. Nachbar, PC
123 W. 1sr St.
Casper, WY 82601

Linlog LLC
c/o Rocky Mountain Title
147 So. Wolcott
Casper, WY 82601

M&K Electrical & Refrigeration
3501 East 21st St.
Casper, WY 82609

MDM Construction
P.O. Box 529
Ralston, WY 82240

Mercury Electric
P.O. Box 81
Casper, WY 82602

Midwest Bank
P.O. Box 737
215 Front Street South
Barnesville, MN 56514-0737

Pacific Coast Supply
4290 Rosebille Road
North Highlands, CA 95660-5710

Pinnacle Bank
P.O. Box 218
Cody, WY 82414-0218

Powell Garage Door
678 Meadow Ct.
Powell, WY 82435

Sheet Metal Specialties
P.O. Box 1243
Casper, WY 82602

Sherwin Williams
3905 E. 2nd Street
Casper, WY 82609-2326

Tennessee Commerce Bank
381 Mallory Station Rd., Ste 207
Franklin, TN 37067

U.S. Bank/Manifest Funding
1450 Channel Parkway
Marshall, MN 56258

United Building Center/Pro-Build
Credit Decisions International
95 Randall Street
Elk Grove Village, IL 60007

Volvo
P.O. Box 26131
Greensboro, NC 27402-6131


Dated:    January 29, 2010


_____
Dawn R. Scott

Wyoming Real Estate Network, Inc.
306 N. Bent
**Powell, WY 82435**
**Phone: 307-754-5500    Fax: 307-754-2600**

**CONTRACT TO BUY AND SELL REAL ESTATE**
**(RESIDENTIAL)**
Prepared: August 02, 2008

Powell _____ , Wyoming

1   **I.   OFFER TO PURCHASE** dated August 02, 2008 _____ , from
Sandra A. McWhirter

2   ("Buyer"), to
Aspen Development LLC

3   ("Seller"). Subject to the provisions of this offer, if accepted by Seller, Buyer agrees to buy and Seller agrees to sell the following described real
4   estate situate in the City or Town of Powell _____ , County of Park _____ , Wyoming, commonly known as
1194 Sequoia Drive, Powell, WY 82435

5   and more particularly described as:
Whispering Pines Addition, Phase 1 amended, Lot 19

6   with all improvements thereon, easements and other appurtenances and all fixtures of a permanent nature currently on the premises except as
7   hereinafter provided, in their present condition, ordinary wear and tear excepted, and including all personal property described herein
8   (hereinafter "Property").
9   **II.   EARNEST MONEY.** Buyer delivers $ 1,000.00 _____ in the form of wire transfer _____ with Broker working with
10   the Buyer, Wyoming Real Estate Network, Inc. _____ (Selling Broker's Name),
11   *(select one):*

12   ☐ herewith, which Broker working with the Buyer acknowledges having received, or

13   ☒ no later than 48 _____ hours after mutual acceptance hereof.
14   Listing Broker, Wyoming Real Estate Network _____ shall deposit such funds (in its trust account) *or* (in an appropriate
15   trust account with ========================== _____ as closing agent) *(select one)* by close of the next banking day following
16   its receipt from Broker working with the Buyer, or from Buyer, and shall retain such funds in such account. If the earnest money deposit is not
17   received as described in this section, this contract shall be void. Listing Broker shall not disburse such deposit until Buyer's check has cleared
18   Buyer's bank and, if this offer has been accepted, until closing or until the parties hereto have otherwise agreed in writing regarding
19   disbursement of such funds.
20   **III.   PURCHASE TERMS.** Buyer agrees to buy the above-described property upon the following terms and conditions and for a purchase price
21   of ($ 235,000.00 ) two hundred thirty-five thousand _____ Dollars
22   payable as follows:
23   $ _____1,000.00_____ earnest money deposit; and at least
24   $ _____ by obtaining a new loan (per Section IV A); and/or
25   $ _____ assumption; and/or
26   $ _____ note and mortgage to Seller (see Owner/Seller Financing Addendum attached hereto); and/or
27   $ _____ *(other)* _____ ; and/or
28   $ ____234,000.00____ (approximate) balance of purchase price to be paid in collected or immediately available funds acceptable to the
29   closing firm.
30   **IV.   LOAN TERMS.**
31   \\\ \A\ \Any loan is to be obtained \which is appropriate type and of applicable nature, if any:
32   \\\ \1\ \Conventional \\\\\\ \A\ \VA \or \\\ \FHA \or \\\ \WCDA \or \\ \Other\

33
34   \Said loan is to be amortized for a period of \\\\\\\\\\\\ \years at an initial interest rate not to exceed \\\\\\\\\\\ \% per annum \with \\
35   \initial monthly payments of principal and interest of approximately $\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\
36   \\\\\\\\ \Loan discount points required by Lender, if any, shall be paid including any additional \\\\\\\\\\\\ \% of the total loan amount in\
37   \\\\\\\ \The first \% duty\\\\\\\\\\\ \loan discount point(s) shall be paid by\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\, and the balance, if \
38   \\\ \any, shall be paid by \\\\\\\\\\\\\\\\\\\\\\\\\\\ \. Any amount payable to be paid by Seller shall not be used for the origination\
39   \\\\ \fee,\\loan costs, reserves) or any other lender\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\
40   \\\ \2.\ \If Buyer agrees to a deposition which qualifies for terms other than that above, the approval of Seller shall not be required, provided Seller\

**PREPARED BY: DeLee Wood, Sales Associate**
WAR Form 300-1008, Contract To Buy And Sell Real Estate (Residential), Wyoming Association of REALTORS®
2004© Wyoming Association of REALTORS®
RealFAST® Software, ©2008, Version 6.17 Beta. Software Registered to: Office Manager, Wyoming Real Estate Network, Inc.

Buyer(s) _SMc_                    08/02/08 12:06:01



EXHIBIT
A

41 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\
42 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\
43 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\
44 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\
45 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\
46 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\
47 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\
48 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\ of this
49 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\ available
50 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\
51 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\ such
52 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\
53 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\ for such
54 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\ Seller, by
55 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\ above
56 \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\
57

## VI. CLOSING COSTS.

58

59    A.   Buyer shall pay the following loan and closing costs in cash or certified funds at closing, or on the date specified by Lender:

60       1.   Loan origination fee, discount points, credit report, appraisal, inspections and/or certifications;

61       2.   Any other costs of securing financing;

62       3.   Any prepaid tax, insurance and/or mortgage insurance;

63       4.   Recording fees for warranty deed and mortgage;

64       5.   Fees for the title insurance policy as described in Section VIII B below, including fees for extended lien and survey coverage f

65          requested by buyer; and

66       6.   Other: __all customary costs associated with obtaining financing__ _____

67    B.   Seller shall pay the following closing costs in cash or certified funds at closing:

68       1.   Recording fee for any mortgage releases, deed preparation and Owner's title insurance policy as stated in Section VIII B below;

69       2.   Other: __None__

70    C.   Closing firm's fee shall be paid by  **(BUYER) (SELLER)**  $200 fee split equally between buyer and seller _____

71    D.   General taxes for the year of closing based on the most recent assessment, personal property taxes, prepaid rents, water rents, sewer

72 rents, homeowner's and condominium association fees, dues or assessments, mortgage insurance premiums, and interest on encumbrances, if any

73 and if applicable, shall be apportioned through date of closing. Assessments for all special improvements now installed to the extent due and

74 payable on or before closing shall be paid by Seller. Any such installments becoming due after closing shall be paid by Buyer in the amount of

75 $ ///////////////// per ///////////////// for a period of ///////////////////////////////////// .

76    E.   Any unreleased judgments, liens, or other encumbrances affecting all property included in the purchase price and required to be paid,

77 shall be paid by Closing Agent from the proceeds of this transaction, or paid by the responsible party in cash or certified funds at time of closing.

## VII. ITEMS INCLUDED IN PURCHASE PRICE.

78

79    A.   Price shall include all fixtures currently on premises, including but not limited to, all lighting, heating and plumbing fixtures, all outdoor

80 plants, air conditioning, ventilating fixtures and evaporative coolers, built-in appliances, permanently attached floor coverings, storm windows

81 and storm doors, screens, garage door openers and controls, smoke/fire detection devices, exhaust and ventilating fans, antennas, TV

82 satellite dishes, brackets and controls, attached mirrors, awnings, water softeners (if owned by Seller), propane tanks (if owned by Seller), heating

83 stoves and fireplace inserts *(delete items not included)* and

84 PROVIDED HOWEVER that the following fixtures of a permanent nature are to be EXCLUDED from the sale:

85 Seller agrees to remove all such excluded fixtures in a workmanlike manner without causing damage to the premises, on or before the date of

86 possession or closing, whichever is sooner. Any such damages shall be repaired at Seller's expense.

87    B.   The price shall also include the following personal property items currently on the premises:

88 in the condition as stated in Section X below.

89    C.   The Price shall also include any Propane or other heating liquid remaining in any tank on the premises.

## VIII. TITLE

90

91    A.   Title shall be conveyed to the following named Buyer(s):

Sandra A. McWhirter Revocable Trust

92 as *(Sole Owner)* *(Husband and Wife)* *(Joint Tenants with Rights of Survivorship)* *(Tenants in Common)* *(Partnership)*

93 *(LLC)* *(Corporation)* (Trust) *(Buyer Delete all except one.)*

94    B.   Seller agrees to furnish, at Seller's expense, a current commitment for an Owner's title insurance policy in an amount equal to the

PREPARED BY: DeLee Wood, Sales Associate
WAR Form 300-1006, Contract To Buy And Sell Real Estate (Residential). Wyoming Association of REALTORS®
2004© Wyoming Association of REALTORS®
RealFAST® Software, ©2008, Version 6.17 Beta. Software Registered to: Office Manager, Wyoming Real Estate Netwok, Inc.
Buyer(s) _Smi_          08/02/08 12:05:01          Page 3 of 6
Seller(s) _____

95 purchase price, showing merchantable title in Seller. Seller agrees to deliver the title insurance commitment to Buyer no later than
96 **August 12, 2008**_____, and deliver the policy to Buyer without unreasonable delay after closing and pay the premium thereon at
97 the time of closing. Buyer, within _____5 days of receipt of the title insurance commitment and exceptions, encroachments, covenants, and/or
98 easements identified therein shall identify and provide to the Seller, in writing, notice of any title defects which Buyer is requesting be addressed
99 before closing. Buyer shall pay for any Mortgagee's title policy and any endorsements or any extended survey coverage required by Lender or
100 Buyer.
101 C. Title shall be merchantable in Seller. Seller agrees to execute and deliver a general warranty deed, or ///////////////////// deed,
102 including the release and waiver of all homestead rights, if any, and a good and sufficient bill of sale to Buyer conveying said real and personal
103 properties. Title shall be subject to general taxes for the year of closing, local improvement districts, guaranteed revenues to utility companies,
104 building and zoning regulations, city, county and state subdivision and zoning laws, easements, restrictive covenants, and reservations of record
105 and the following additional encumbrances which shall NOT be released or discharged at closing:
   None known at this time

106 D. Except as stated in Section VIII C above, if title is not merchantable or otherwise recordable and written notice of such defects in title is
107 given by Buyer to Seller or Listing Broker within the time herein provided for in VIII B above and shall not be rendered merchantable within 30
108 days after such written notice, then this contract, at Buyer's option, may be declared void and of no effect by written notice to the Seller, and each
109 party hereto shall be released from all obligations hereunder and the payments made hereunder shall be thereupon returned forthwith to Buyer;
110 PROVIDED, HOWEVER, that in lieu of correcting such defects, Seller may, within said 30 days, obtain a commitment for Owner's title
111 insurance policy in the amount of the purchase price reflecting title insurance protection in regard to such defects, and Buyer shall accept the
112 then existing title insurance in lieu of such merchantable title, in which case Buyer shall be deemed to have waived such defect. Seller shall pay
113 the full premium for such Owner's title insurance policy.
114 E. The surface estate may be owned separately from the underlying mineral estate, and transfer of the surface estate does not necessarily
115 include transfer of the mineral rights. Unless the Contract specifically includes the transfer of the mineral estate, this transaction is for the
116 surface estate only. Third parties or the Seller may hold interests in oil, gas, other minerals, geothermal energy or water on or under the property,
117 which may give them rights to enter and use the surface of the property. Such matters may be excluded from the title insurance policy. Buyer is
118 advised to timely consult legal counsel with respect to such matters.
119 F. Buyer acknowledges and agrees that Buyer has been advised to carefully review the title commitment and all exceptions, encroachment
120 covenants, easements, and related matters described therein or otherwise identified.
121 Other than the defects submitted to the Seller in writing pursuant to VIII B. above, or in the event no title issues are raised in writing by
122 Buyer, Buyer accepts the condition of title as satisfactory.
123 **IX. CLOSING AND POSSESSION.**
124 A. Closing shall occur on **August 22, 2008**_____, or as otherwise mutually agreed in writing between the parties, at a time
125 and place which shall be designated by Listing Broker. Seller, at Seller's option, may continue to offer subject property for sale until closing
126 Seller understands, however, that any additional offer accepted may subject Seller to remedies provided by law for breach of the original Contract.
127 B. Possession shall be delivered to Buyer on **closing**_____, _____, //////////// with 3/4 a.m. or as otherwise mutually
128 agreed in writing between the parties. If Seller fails to deliver possession by the date herein specified, Seller shall be subject to eviction by Buyer.
129 This remedy is in addition to any other remedies Buyer may have.
130 C. Possession shall be subject to the following leases or tenancies:
131 1. Copies of all leases and/or tenants' written verifications of rental terms, security/damage deposits and status are attached hereto
132 and accepted by Buyer. Seller agrees to notify Buyer of any change in tenant status immediately.
133 2. All security/damage deposits shall be transferred to Buyer at closing.
134 **X. CONDITION OF PROPERTY.**
135 A. Seller represents that upon execution of this Contract:
136 1. There are no known violations of applicable city, county and/or state subdivision, zoning, building and/or public health codes,
137 ordinances, laws, rules and regulations and any recorded covenants in force and effect as of that date except:
138 none

139 NOTE: Whether a property meets the above codes, ordinances, laws, rules and regulations is a technical question which may require
140 special expertise. If the Buyer has concerns about these issues, the Buyer should contact the applicable departments of the city, county,
141 and/or state or retain a firm with specialized expertise to investigate the issue.
142 2. The property, and all fixtures, appurtenances and improvements thereon, shall be conveyed in their present condition, ordinary
143 wear and tear excepted, unless otherwise agreed in this Contract.
144 3. Property Disclosure. *(Initial A or B).*
145 A. The undersigned Buyer acknowledges that Buyer has received, read and understands a WAR Form 300R, and has been and both parties copy of
146 ~~~~~ which is attached hereto and incorporated by this reference.
147
148 *Jac* B. A Property Disclosure is not available.
149 Initial Initial
150 B. Buyer acknowledges and agrees that, upon execution of this Contract:
151 1. Buyer is not relying upon any representations of Seller or Seller's Agents or representatives as to any condition which Buyer deems
152 to be material to Buyer's decision to purchase this property; and
153 2. Buyer has been advised by Selling Broker of the opportunity to seek legal, financial, construction, air quality (such as mold),
154 environmental (such as radon and lead-based paint) and/or professional home inspection services regarding this purchase.
155 3. SQUARE FOOTAGE/ACREAGE VERIFICATION: Buyer is aware that any reference to square footage or acreage of the real

PREPARED BY: DeLee Wood, Sales Associate
WAR Form 300-1006. Contract To Buy And Sell Real Estate (Residential). Wyoming Association of REALTORS®
2004© Wyoming Association of REALTORS®
RealFAST® Software, ©2008, Version 6.17 Beta. Software Registered to: Office Manager, Wyoming Real Estate Network, Inc.
Buyer(s) *Sall*                    08/02/08 12:05:01                    Page 3 of 6
Seller(s) _____

**XI. LENDER OR APPRAISER INSPECTIONS.**

A. The parties understand that the inspections required by an Appraiser/or Lender may not occur within the time frame described below in Section XII. Seller agrees to allow Appraisers or Lenders to perform inspections. Buyer shall provide a copy of the written reports of Lender or Appraiser inspections and repair requirements to the Seller immediately upon receipt. If Lender or Appraiser inspections disclose defects in the Property which Appraiser/Lender requires to be repaired as a loan requirement, Buyer and Seller agree to share the costs of such repairs as provided in Section XII(B)(1) below.

B. The parties agree that if the repairs required by the Lender or Appraiser exceed the total of the amount provided in Section XII(B)(1), the parties will negotiate payment of said repairs and will have seventy-two (72) hours from written notification to negotiate payment of these costs. If the parties are unable to agree on payment of additional repairs or costs within seventy-two (72) hours of both parties receiving notice of the Lender or Appraiser required repairs, this Contract shall be voidable at the option of the Buyer, upon written notice to the Seller within the seventy-two (72) hour period. If this Contract is not voided by the Buyer in writing within the seventy-two (72) hour period, Buyer acknowledges sole responsibility for the repairs and accepts the Property in "as is, where is" condition without any implied or express warranty by Seller or by any Broker. If Buyer elects to void the Contract within the seventy-two (72) hour period provided in this Section, the earnest money deposit shall be returned to Buyer, pursuant to the requirements of Section II above.

**XII. INSPECTIONS BY BUYER.**

A. Buyer may obtain, at no expense to Seller, electrical, mechanical, structural, air quality (such as mold), environmental (Such as radon or lead-based paint-see attached Addendum), and/or other inspections of the Property by qualified professional inspectors and/or engineers, and shall pay for any damage to Seller's property caused by such inspectors and/or engineers. Buyer, or designee, shall have the right to make any inspections of the physical condition of the Property at reasonable times, upon at least 24 hours advance notice to Seller. Unless Seller receives written notice, signed by Buyer or licensee working with the buyer on or before August 14, 2008 _____ , 4:00 _____ \a.m./p.m. (Objection Deadline) of any defect(s) identified by inspectors or engineers that Buyer is requesting to be repaired, the physical condition of the property shall be deemed to be satisfactory to Buyer.

B. If Buyer's inspectors have identified or required any repairs of the Property before the Objection Deadline set out above, Buyer and Seller agree to share the cost of such repairs as follows:

  1. Select one option:\ \(SELLER to pay\) (BUYER to pay) (Buyer and Seller agree to equally share) cost of repairs up to $ _–0–_____.

  2. If repairs exceed the total of above amount, any additional cost shall be paid by agreement of the parties. If the parties are unable to agree on payment of additional costs, this contract shall be voidable at the option of Buyer, upon written notice to Seller no later than August 20, 2008 _____ , 4:00 _____ \a.m./p.m. (Resolution Deadline). If not voided by the Buyer, Buyer acknowledges sole responsibility for repairs and accepts property in "as is, where is" condition without any implied or express warranty by Seller or by any Broker.

  3. If Buyer elects to void the contract in accordance with Section XII (B)(2) above the earnest money deposit shall be returned to Buyer pursuant to the requirements of Section II above.

C. Waiver of Defects. Buyer acknowledges that Buyer has been given ample opportunity to inspect the property. Other than repairs or defects submitted to the Seller in writing pursuant to XII (A) or XI above, or in the event no repairs or inspections are required by Buyer, Buyer accepts the Property in its entirety in "as is, where is" condition without any implied or express warranty by Seller or by any Broker.

**XIII. INSURANCE.**

Buyer hereby acknowledges that Buyer has been advised to investigate, research and obtain a written commitment for adequate property and liability insurance prior to closing.

**XIV. RISK OF LOSS.**

Risk of loss shall remain with Seller until delivery of deed. In the event that premises shall be damaged by fire or other casualty prior to time of closing, in an amount of not more than 10% of the total purchase price, Seller shall be obligated to repair the same before the date herein provided for delivery of deed. In the event such damage cannot be repaired within said time or if such damage shall exceed such sum, this contract shall be voidable at the option of Buyer. Should Buyer elect to carry out this Contract despite such damage, Buyer shall be entitled to all of the insurance proceeds resulting from such damage.

**XV. DEFAULT, REMEDIES AND ATTORNEY'S FEES.**

A. TIME IS OF THE ESSENCE hereof, and any party who fails to tender any payment, or perform any other condition hereof as herein provided, shall be in default of this Contract. In the event of default, the non-defaulting party may elect to either treat this Contract as breached and recover such damages as may be proper, or may treat this Contract as being in full force and effect and require specific performance of the terms hereof. In lieu of the remedy provided above to Seller if Buyer is the defaulting party, Seller may elect to terminate the Contract and recover such damages as may be proper, or Seller may elect to retain all payments made hereunder as liquidated damages, such amount, if elected by Seller, being agreed by the parties hereto to constitute compensation for the loss of opportunity suffered by Seller due to such breach.

B. In the event that any party shall become in default or breach of any of the terms of this Contract, such defaulting or breaching party shall pay all reasonable attorney's fees and other expenses which the non-breaching or non-defaulting party may incur in enforcing this Contract with or without formal proceedings. This provision shall not limit any other remedies to which the parties may otherwise be entitled.

C. Seller and Buyer agree that in the event of any controversy regarding earnest money or things of value held by Broker, unless Broker receives written instructions from both Buyer and Seller regarding disposition of the earnest money or things of value, Broker, in its sole discretion, may hold the earnest money or things of value or may interplead all parties and deposit the earnest money deposit or things of value into a court of competent jurisdiction. Broker shall be entitled to recover its attorney's fees and costs from the losing party in the action in which the funds are interplead, but if no such award or payment is made, Broker shall recover its court costs and reasonable attorney's fees from the interplead funds or things of value.

**XVI. ADDITIONAL PROVISIONS.**

1. For the purpose of this contract, facsimile signatures will be accepted as originals.

PREPARED BY: DeLee Wood, Sales Associate
WAR Form 300-1008, Contract To Buy And Sell Real Estate (Residential). Wyoming Association of REALTORS®
2004© Wyoming Association of REALTORS®
RealFAST® Software, ©2008, Version 8.17 Beta. Software Registered to: Office Manager, Wyoming Real Estate Network, Inc.

Buyer(s) _____   08/02/08 12:06:01   Page 4 of 8
Seller(s) _____

2.  Seller to do a walk-through with buyer within 90 days of closing.  $20,000 of seller's proceeds to be placed into escrow and released upon full completion of house and landscaping not to exceed 90 days from closing
3.  See attached Exhibit "A".

220  **XVII. ADDENDA ATTACHED (Check all that apply.)**
221
222  ☐  Lead-Based Paint Disclosure                     ☒  Covenants
223  ☐  Addendum for Additional Provisions               ☐  Preliminary Title Commitment
224  ☒  Real Estate Brokerage Disclosure Form            ☐  Property Condition Disclosure
225  ☐  Consent Amendment & In-Company Transaction Disclosure  ☐  1031 Tax Deferred Exchange Notice
226  ☐  HUD Home Inspection Form                         ☐  Evidence of Authority
227  ☐  Easements                                        ☐  Other: _____
228
229  **XVIII. CONSENTS AND ACKNOWLEDGMENTS.**
230      A.  All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral agreements or
231  representations between Buyer, Seller or Brokers to modify the terms and conditions of this Contract.
232      B.  Brokers are authorized to disclose information regarding this sale, and terms thereof, for comparable sold data and statistics to any
233  Multiple Listing Service, Board of REALTORS® or potential clients or customers, but only after the closing of this transaction.
234      C.  This Contract is executed in multiple copies and by their signatures hereon each party acknowledges receipt of a signed copy at the time
235  of signing.
236      D.  Wyoming Real Estate Network, Inc. _____ hereby discloses that it is working with the Buyer as
237  ~~(Seller's Agent)~~ ~~(Seller's Subagent)~~ ~~(Buyer's Agent)~~ (Intermediary) (delete all but one) and will be compensated by (Seller) ~~(Buyer)~~ by
238  ~~(Listing Broker)~~ (delete all inapplicable). Buyer and Seller consent to that arrangement. Buyer has received, read and acknowledged a Real
239  Estate Brokerage Disclosure and an executed copy of the Disclosure is **ATTACHED HERETO.**  Broker working with Buyer hereby delivers
240  to Broker working with the Seller a copy of the executed Real Estate Brokerage Disclosure.
241
242  **XIX.  OFFER BY BUYER.**
243      If this offer is accepted by Seller in writing on or before  Augusti 06, 2008 _____, at  4:00 _____ \a.m./p.m., the parties hereto,
244  their heirs, successors, representatives and assigns shall become bound to the terms hereof.
245      **THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS,**
246          **CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.**

Wyoming Real Estate Network, Inc.
306 N. Bent
Powell, WY 82435
Phone: 307-754-5500,     Fax: 307-754-2600

By: _DeLee Wood_    _Aug. 3, 2008_
Signature  /  DeLee Wood                                          Date

BUYER _Sandra A. McWhirter_  WITNESS _DeLee Wood_  DATE _August 3, 2008_
Sandra A. McWhirter

247  **XX.  DISCLOSURE BY LISTING BROKER.**
248      Listing Broker Wyoming Real Estate Network, Inc. _____ (Brokerage Firm), hereby discloses that it is working
249  with the Seller as a (Seller's Agent) or ~~(Intermediary)~~ (Delete One) and will be compensated by (Seller) (or ======================= )
250  (Delete inapplicable). Seller consents to this arrangement. Seller has received, read and acknowledged a Real Estate Brokerage Disclosure and
251  an executed copy of the Disclosure is attached hereto.  Broker, working with Seller, hereby delivers to Broker working with the Buyer, a copy of
252  the executed Real Estate Brokerage Disclosure.

PREPARED BY: DeLee Wood, Sales Associate
WAR Form 300-1006, Contract To Buy And Sell Real Estate (Residential). Wyoming Association of REALTORS®
2004© Wyoming Association of REALTORS®
RealFAST® Software, ©2008, Version 6.17 Beta. Software Registered to: Office Manager, Wyoming Real Estate Network, Inc.
08/02/08 12:05:01                                      Page 5 of 5
                                                        Seller(s) _____

Exhibit "A"

This Contract to Buy and Sell Real Estate is contingent upon the following:

1. Completion of house and interior move in ready no later than August 22, 2008.
2. Completion and passing of:
    CC&R inspection
    Building inspection
    Installation of all monitor detectors (smoke, carbon monoxide, radon if
    applicable in the area). All inspections to be completed by August 11, 2008
3. Seller to fix bowed wall in hallway
4. Parties agree to the following:
    (a) Builder's written warranty for minimum of 18 months
    (b) Deck off of family room to be 12 feet by 14 feet
    (c) Appliance garage in kitchen to match existing cabinets, buyers choice of
        location
    (d) Power and outlet to kitchen island if not already provided
    (e) Additional cabinet to be installed just to the left of French doors
    (f) All faucets are to be 2 handle, brand and style to be provided for approval
        prior to installation
    (g) Hardware for cabinets, brand and style provided for approval prior to
        installation
    (h) Ceiling light/fan in all bedrooms, buyer to approve
    (j) Approval of landscaping design prior to planting
    (j) Landscaping to be on all 4 sides with such details as per the attached bid
        from Cactus Creek Landscaping. (Exhibit "B")
    (k) Seller to do walk through with designee prior to closing if buyer not
        available
    (l) Builder continues with all insurance until completion
    (m) Removal of Winnebago and LP gas tank to another building site prior to
        closing
    (n) The kitchen center built-in set in island is not to be installed
    (o) An outside water faucet to be installed in the backyard
    (p) The present kitchen door to the utility room will be moved to open in the
        opposite direction
    (q) The current light switch to the left of the utility door in the kitchen will be
        moved to the right side of the utility door in the kitchen

*OK* (next to o)

*SM* *R* Granite counter tops to be approved prior
    to installation

*JM Whiter August 3, 2008*

1194 Sequoia Drive
Powell, WY

Offer $227,700

Contingent upon:

1.Completion of house and landscaping as specked,

      Exterior as scheduled.

      Interior move in ready no later than August 22, 2008

2. Completion and passing of:

      CC&R inspection,
      Building inspection, (buyers choice)
      Installation of all monitor detectors. Smoke, Carbon Monoxide, radon if applicable in the area

3. Seller will fix bowed wall in hallway.

4. Buyer does not want the refrigerator nor the in island kitchen center

5. Buyer wants:

      Written warranty for min of 1yr from builder..?18months

      Deck off of family room to be 12ft x 14ft

      Appliance garage in kitchen, to match existing cabinets, buyers choice of location,

      Power  and outlet to kitchen island if not already provided

      Wall and base cabinets to the left of family room French doors to match existing cabinets , i.e. spice rack, cookie sheet cabinet. ( if not already included)

      All faucets are 2 handle, brand and style to be provided  for approval prior to installation

      Hardware for cabinets, brand and style provided for approval prior to installation

      Ceiling light/fan in all bedrooms( if not already included.) buyer to approve

      Exterior lighting brand and style provided and approved prior to insallation

      Approval of landscaping design prior to planting

      Sod to include front, sides and........in back around steps  from deck  12ft x 14 ft( or connecting the steps of the  2 deck whichever is less)

      Seller to do walk through with designee prior to closing if buyer not available

      Seller to do a walk through with buyer within 90 days of closing

      Builder continues with all insurance until completion

      Removal of Winnebago and lp tank to another building site prior to move in ( children and safety issue)

Wyoming Real Estate Network
Correct 1008 North Bent 7 of 25
Powell, WY 82435-2338
Phone: 307-754-5500,    Fax: 307-754-2600

**COUNTER OFFER**

COUNTER OFFER # <u>One</u>_____ (1,2,3, etc.)

**THIS COUNTER OFFER SUPERSEDES ALL PRIOR COUNTER OFFERS. THE CHANGES TO THE TERMS AND
CONDITIONS LISTED BELOW ALONG WITH ANY ATTACHED CONTRACT TO BUY & SELL REAL ESTATE
AND/OR ADDENDUMS ARE CONSIDERED A NEW OFFER AND ALL PREVIOUS OFFERS AND COUNTER OFFERS
ARE VOID.**

**THIS IS A LEGALLY BINDING DOCUMENT. READ THE ENTIRE DOCUMENT INCLUDING ANY
ATTACHMENTS. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS, CONSULT LEGAL OR
OTHER COUNSEL BEFORE SIGNING.**

This is a Counter Offer to the Contract to Buy and Sell Real Estate, dated <u>August 02, 2008</u>_____ pertaining to:
ADDRESS:
1194 Seqoia Dr., Powell, Wy

LEGAL DESCRIPTION:
Lot 19 Whispering Pines Addition to the City of Powell

BUYER:

        Sandra A. McWhurter

SELLER:

        Aspen Development

☒   **This is a SELLER counter offer.** The Seller reserves the right to continue to offer the Property described in the attached
Contract to Buy and Sell Real Estate for sale. Seller may accept any other offer until the original, a copy or facsimile of this
Counter Offer, duly accepted and signed by Buyer, has been delivered in writing to the Seller or Seller's Agent within the time
frame specified herein.

☐   **This is a BUYER counter offer.** The undersigned BUYER reserves the right to withdraw this counter offer until the original,
a copy or facsimile of this Counter Offer, duly accepted and signed by Seller, has been delivered in writing to the Buyer or Buyer's
Agent within the time frame specified herein.

The parties accept all of the terms and conditions in the attached Contract to Buy and Sell Real Estate and all attached Counter Offers
with the following changes:

<u>INSERT EXPANDABLE LINES</u>

Purchase Price to be $245,000
The following clarifies and in some cases changes Exhibit A attached.
1.  Closing on or before August 29, 2008 but possession can not be delivered until August 29, 2008.
2.  Final building inspections to be August 27th.  A list of unfinished items will be agreed to and
    be $20,000 in escrow will be released to seller upon total completion.
3.  Seller will check out bowed wall and will fix IF it can be fixed.
4.  Seller's typical Warranty is 12 months but seller will agree to an 18 month Warranty.
5.  12' X 14' landing from Family Room to be concrete patio
6.  Appliance garage will be extra.  Seller will install but buyer must pay as an add-on.
7.  Power outlet in kitchen will be installed (in island).
8.  Buyer can pick faucets.  Seller will provide samples to chose from (Moen quality).
9.  Buyer may pick cabinet harware from Seller's samples.
10. Buyer may choose fans from Seller samples.
11. Seller will complete landscaping and use Cactus Creek or whomever they desire. A landscaping site

PREPARED BY: Gloria Frisby Hedderman, Broker/Owner
WAR Form 720-707, Counter Offer. Wyoming Association of REALTORS®
RealFAST® Software, ©2008, Version 6.16. Software Registered to: Office Manager, Wyoming Real Estate Network

08/05/08 16:02:10

Page 1 of 2

Buyer(s) _____                                                                    Seller(s) _____

EXHIBIT
B

plan detailing layout and design to be provided and agreed to no later than closing. See Additional provisions XVI.

12. Seller agrees to walk-thru with buyer's designee.
13. Seller will maintain insurance until closing.
14. Motor home and tank will be moved.
15. Kitchen center Built-in Set for blender and mixer will NOT be installed as per buyer request.
16. Utility room door from kitchen will be reversed.
17. Light switch by utility door will be moved to the right side.
18. Cabinet by French door will be installed.
19. Granite color will be chosen by Seller UNLESS a color is chosen from the paper samples provided ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ no later than August 8th at 5 p.m.
20. Parties understand that side-by-side refrigerator is not included, however oven/range, microwave, and dishwasher are included.

To the extent the terms of this Counter Offer modify or conflict with any provisions of the Contract to Buy and Sell Real Estate including all prior Counter Offer (s), the terms in this Counter Offer shall control. All other terms of the attached Contract to Buy and Sell Real Estate including all prior Counter Offer (s) not modified by this Counter Offer shall remain the same. All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral agreements or representations between Buyer, Seller and/or any Brokers which modify the terms and conditions of this Counter Offer and the attached Contract to Buy and Sell Real Estate. **Buyer and Seller acknowledge the terms contained in Section II and Section III of the Contract to Buy and Sell Real Estate may change if the purchase price is changed as part of this Counter Offer.** Upon its execution by both parties, this agreement is made an integral part of the aforementioned Contract to Buy and Sell Real Estate.

If a signed acceptance is not delivered in person, by mail, facsimile or electronic transmission on or before (date) August 07, 2008      at 5_____ A.M. / P.M. this Counter Offer shall be deemed to have expired.

**Buyer or Seller Counter Offer**

Buyer/Seller _____    Witness _____    Date 8/6/08    Time 5 pm

Buyer/Seller _____    Witness _____    Date _____    Time _____

**Buyer or Seller Acceptance of Counter Offer**

Buyer/Seller _____    Witness _____    Date _____    Time _____

Buyer/Seller _____    Witness _____    Date _____    Time _____

**Buyer or Seller Rejects this Counter Offer**

Buyer/Seller _____    Witness _____    Date _____    Time _____

Buyer/Seller _____    Witness _____    Date _____    Time _____

**Buyer or Seller's Receipt of Accepted Counter Offer**

Buyer/Seller _____    Witness _____    Date _____    Time _____

Buyer/Seller _____    Witness _____    Date _____    Time _____

PREPARED BY: Gloria Frisby Hedderman, Broker/Owner
WAR Form 720-707, Counter Offer. Wyoming Association of REALTORS®
RealFAST® Software, ©2008, Version 6.18. Software Registered to: Office Manager, Wyoming Real Estate Network
08/05/08 16:02:10
Buyer(s) _____                                                                          Seller(s) _____

Page 2 of 2

8-06-08

Counter-offer for McWhirter

Counter Price...............................$245,000

Counters to Exhibit A:

1. Move in date of Aug 29th
2. Inspections cannot possibly be done by Aug 11th. Agree to everything here except Date. Aug 27th for final inspections.
3. Checking on the bowed wall. Will fix IF it can be fixed. Investigating
4. A. Our typical warranty is 12 months. We will agree to extend it to 18 months.
5. Deck. Seller agrees to do concrete steps and concrete pad off living room. *12 x 14 ok*
6. Appliance garage will be extra. We will install but buyer must pay as an add-on.
7. Power outlet to kitchen will be installed. (unsure where and what...but we can do it)
8. Buyer can pick faucets...Seller will provide samples to chose from. *Moen*
9. Buyer may pick cabinet hardware from Seller samples
10. Buyer may choose fans from Seller samples.
11. Seller willing to complete landscaping. Seller willing to follow bid from Cactus Creek, but will not agree to use Cactus Creek. Seller may use whomever it desires. Seller wants a layout of the property and a design of where rocks, islands etc will be placed.
12. Seller agrees to walk-thru with buyer designee
13. Insurance must remain until sale date.
14. Motor home and tank will be moved.
15. Seller will not install center island in kitchen per buyer request
16. Utility room door from kitchen will be reversed
17. Light switch by utility door will be moved to the right side.
18. Cabinet by French door will be installed
19. Granite color may be chosen by buyer BUT must be chosen by August 8th or the color will be determined by Seller.

8/6/08

Exhibit "B"

Cactus Creek Landscaping

## BID PROPOSAL FOR WHISPERING PINES SUBDIVISION

Bid consists of the following:

1   Finish grading and preparation of soil will be done for the application of sod.
2   Any "islands" will be raised with non native fill dirt.
3   Landscape fabric will be laid in preparation of either landscape rock or mulch.
4   Two or more trees and shrubs will be planted to accommodate landscape.
5   Large sized boulders will be placed accordingly.
6   Quality sod will be laid.
7   A Weathermatic irrigation system will be trenched and installed.
8   Curbing shall be laid around any trees, house, islands and any other verified place.

Terms if bid:

1   A satisfactory finish grade shall be done by general contractor.
2   Bid is subject to change in the event of not having line stubbed out of house for irrigation.
3   Bid is subject to change after 60 day period.  Today's date April 21, 2008.

Escrow Memorandum of Understanding

Re: The sale of the property located at 1194 Sequoia, Powell, WY
Contract to Buy and Sell Real Estate dated August 2, 2008
Buyer: Sandra A. McWhirter
Sellers: Aspen Development, LLC
_9-11-09_
Date

Parties agree that $20,000 (escrowed funds) is withheld from Seller's Proceeds until house
is completely finished in a workmanlike manner and landscaped as per aforementioned
Contract to Buy and Sell Real Estate. Said funds to be held in Wyoming Real Estate Trust
Account and turned over to Seller's lender upon completion (as per Title Commitment
requirement). A walk-thru by buyer or buyer's representative to be schedule prior to release
of said escrowed funds.

1. House to be finished in a workmanlike manner including installation of electrical,
   lighting fixtures, cabinetry, final painting of walls and trim inside and out, door handles,
   and miscellaneous hardware including cabinet pulls.

2. Landscaping (including grading) to be completed according to the aforementioned
   Contract. Buyer to approve the landscape plans and said plans to be in compliance with
   subdivision covenants.

Additionally, finishing details of concern following buyers visit of August 23, 2008 include
the following:

a. Buyer still needs to be given samples to pick out cabinet hardware, fans and lights.
b. Washer and dryer hook ups to be operational and functional
c. Phone cable in kitchen needs to be
   moved to floor near computer cable in dining area.
d. Repair and restain miscellaneous scratches and dents on cabinets as needed.
e. Repair water damage to kitchen ceiling.
f. Power outlet to be installed for oven/range and outlet for microwave (above stove) to be
   moved up to appropriate location. Power outlet(s) installed in island as per City Code.

Page 1 of 2


EXHIBIT
C

## Memorandum of Understanding (Continued)

g.  Finish floor tile underneath stove.

h.  Move kitchen smoke alarm as per instructions on 8/23/08.

i.  Finish fireplace including surround.  Install TV cable over fireplace

j.  Install all lighting fixtures including large closet in master bedroom, crawl space and steps down to crawl space/furnace area.

k.  Master bath tile work to be completed, with at least soap dish and/or small shelf in shower.  Ceiling/roof vent fans installed in both bathrooms.

l.  Relocate cable boxes in kids' rooms to ground level near the electrical outlets, if not already done.

m.  Shower faucets in main bath to be two handles.

n.  Thermostat: installed

o.  Crawl space vent on West side of house to be repaired.  Any damaged siding to be repaired.  Sidewalk to be repaired.  Install backyard outside water faucet; Roof flashings to be repaired or replaced.

p.  Air Conditioning unit to be installed and in working order.

q.  Can lights in hallway and masterbedroom to be reinstalled to be in a straight line.

r.  Family room deck to be 10x12 (parties verbally agreed that buyer will pay additional cost over and above the standard size of 10 X 10 size).

s.  All windows to open and close properly; water /drains are hooked up and drain properly. All electrical outlets to be functional including refrigerator, oven/range, microwave and and at least some lighting fixtures in each room.


Seller and buyer agree that in the event of any controversy  regarding this Memorandum of Understanding or aforementioned escrowed funds held by Broker, unless Broker receives written instructions from both buyer and seller regarding disposition of the escrowed funds, Broker, in its sole discretion may hold the escrowed funds or may interplead all parties and escrowed funds into a court of competent jurisdiction.  Broker shall be entitled to recover its attorneys fees and costs from the losing party in the action in which the funds are interplead but if no such award or payment is made, Broker shall recover its court costs and reasonable attorney's fees from the interplead funds.


Buyer: _Sandra A. McWhorter_                 Seller: _____


Page 2 of 2

## Memorandum of Understanding (Continued)

g. Finish floor tile underneath stove.

h. Move kitchen smoke alarm as per instructions on 8/23/08.

i. Finish fireplace including surround. Install TV cable over fireplace

j. Install all lighting fixtures including large closet in master bedroom, crawl space and steps down to crawl space/furnace area.

k. Master bath tile work to be completed, with at least soap dish and/or small shelf in shower. Ceiling/roof vent fans installed in both bathrooms.

l. Relocate cable boxes in kids' rooms to ground level near the electrical outlets, if not already done.

m. Shower faucets in main bath to be two handles.

n. Thermostat: installed

o. Crawl space vent on West side of house to be repaired. Any damaged siding to be repaired. Sidewalk to be repaired. Install backyard outside water faucet; Roof flashings to be repaired or replaced.

p. Air Conditioning unit to be installed and in working order.

q. Can lights in hallway and masterbedroom to be reinstalled to be in a straight line.

r. Family room deck to be 10x12 (parties verbally agreed that buyer will pay additional cost over and above the standard size of 10 X 10 size).

s. All windows to open and close properly; water /drains are hooked up and drain properly. All electrical outlets to be functional including refrigerator, oven/range, microwave and and at least some lighting fixtures in each room.

t. Locks re-keyed so that key is different from the other houses.

Seller and buyer agree that in the event of any controversy regarding this Memorandum of Understanding or aforementioned escrowed funds held by Broker, unless Broker receives written instructions from both buyer and seller regarding disposition of the escrowed funds, Broker, in its sole discretion may hold the escrowed funds or may interplead all parties and escrowed funds into a court of competent jurisdiction. Broker shall be entitled to recover its attorneys fees and costs from the losing party in the action in which the funds are interplead but if no such award or payment is made, Broker shall recover its court costs and reasonable attorney's fees from the interplead funds.

Buyer:

Seller:

_____

_____

Page 2 of 2

# WARRANTY DEED

STATEMENT OF CONSIDERATION
ATTACHED
County Clerk's Office

### ASPEN DEVELOPMENT, LLC,
**a Wyoming limited liability company,**

Grantor, of the County of Natrona, State of Wyoming, for and in consideration of Ten Dollars ($10.00) and other good and valuable consideration in hand paid, receipt whereof is hereby acknowledged, conveys and warrants to:

### SANDRA McWHIRTER,
**Trustee of the Sandra McWhirter Trust
under Agreement dated September 9, 2006,**

Grantee, whose address is 7787 Timber Trail, Decatur IL 62521 , the following-described real estate, situate in Park County, State of Wyoming, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of the State:

> Lot 19, Amended Plat, Phase I of The Whispering Pines Subdivision, according to the plat recorded in Book "I" of Plats, page 15, Park County, Wyoming.

> SUBJECT to all patents, easements, rights-of-way, reservations, zoning restrictions, covenants and any other matter of public record or otherwise established; all assessments and subsequently assessed taxes.

WITNESS my hand this 28 day of August, 2008.

ASPEN DEVELOPMENT, LLC

By: _____
RICHARD TODD BERTAGNOLE, Manager

STATE OF WYOMING    )
                    ) ss.
COUNTY OF NATRONA   )

The above and foregoing *Warranty Deed* was acknowledged before me this 28 day of August, 2008, by Richard Todd Bertagnole, Manager of Aspen Development, LLC.

WITNESS my hand and official seal.

_____
Notary Public
My commission expires: Sept. 7, 2010

NOTARY PUBLIC
HENRY M. STRAND
STATE OF WYOMING
COUNTY OF NATRONA
My Commission Expires Sep 07, 2010


EXHIBIT
D

**WYOMING Real Estate NETWORK, LLC**

(307) 754-5500      Fax (307) 754-2600      306 N. Bent, Powell, WY 82435

March 19, 2009

Aspen Development , PO Box 1737, Mills, WY 82644
Sandra McWhirter , 7787 Timber Trail, Decatur, IL  62521

Re:  Aspen Development (Sellers) to Sandra McWhirter (Buyer), 1194 Sequoia, Powell
     Closing Date:  September 11, 2008

Dear Sirs and Madam:

    As you know, a total of $20,000 was escrowed out of the seller's proceeds at
closing to assure the completion of the house.  On October 24, 2008, $7,000 of it was
paid out to T&D Landscaping for their work.  This leaves a balance of $13,000 being
held out for completion of the house.

    After numerous requests, the seller did do some work toward completion of the
house particularly in January of this year.  But the buyer remains dissatisfied with the
progress and states there is much left to be done to finish the house.  As noted in the
attached Memorandum of Understanding, "unless the Broker receives written instructions
from both buyer and seller regarding disposition of the escrowed funds, Broker in its sole
discretion may hold the escrowed funds or may interplead all parties and escrowed funds
into a court of competent jurisdiction.  Broker shall be entitled to recover its attorney's
fees and costs from the losing party… or from the interplead funds."

    It would be too bad if it comes to that as the court costs will be considerable for
both of you.  So I have enclosed a Mutual Release wherein buyer and seller agree to split
the disputed funds equally.  If you wish to negotiate some other split, I will facilitate
paperwork as directed by both parties.  Upon written agreement of both parties, I will
disburse the funds accordingly. Without agreement of both parties,  I will interplead the
funds to the District Court on May 1, 2009.

    Thank you!

                                    Sincerely,

                                    Gloria Frisby Hedderman
                                    Broker

                                                        **EXHIBIT**

                                                        **E**

Enclosures:  Release and Memorandum

Lovell (307) 548-9500      Cody (307) 587-4007      email: wren@wir.net      On the Internet: www.wrensoldit.com